UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**Case Number: 22-10006-CIV-MARTINEZ-BECERRA**

PETER HALMOS, *et al.*,

      Plaintiffs,

v.

RICHARD W. SPINARD, *et al.*,

      Defendants.

_____/

### <u>OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

**THIS CAUSE** came before this Court on the FDEP Defendants'[1] Motion to Dismiss (the "FDEP Defendants' Motion"), (ECF No. 9); FWC Defendants'[2] Motion to Dismiss (the "FWC Defendants' Motion"), (ECF No. 11); and Federal Defendants'[3] Motion to Dismiss (the "Federal Defendants' Motion"), (ECF No. 16; ECF No. 16-1.)  This Court has reviewed the FDEP Defendants' Motion, FWC Defendants' Motion, and Federal Defendants' Motion; pertinent portions of the record; and applicable law and is otherwise fully advised in the premises.

---

[1]    This Court collectively refers to the following group of Defendants as the "FDEP Defendants" for the purposes of this Order: the Florida Department of Environmental Protection ("FDEP") and Shawn Hamilton, in his official capacity as the Secretary of FDEP.  The Complaint twice names FDEP and Secretary Hamilton as Defendants. (*See* Compl. 1, ECF No. 1.)

[2]    This Court collectively refers to the following group of Defendants as the "FWC Defendants" for the purposes of this Order: the Florida Fish and Wildlife Conservation Commission (the "FWC"); Eric Sutton, in his official capacity as the Executive Director of the FWC; Thomas Reinert, in his official capacity as the Regional Director of the Southern Region of the FWC; and Rodney Barreto, Robert A. Spottswood, Steven Hudson, Gary Nicklaus, Gary Lester, Sonya Rood, and Michael W. Sole, in their official capacities as Commissioners of the FWC. (*Id.* ¶¶ 19–28.)  To the extent that the Complaint names the FWC's former Executive Director, Eric Sutton, as a Defendant in this action, (*Id.* at ¶ 19), Acting Executive Director Thomas Eason "is automatically substituted as a party" in light of Mr. Sutton's resignation, *see* Fed. R. Civ. P. 25(d).

[3]    This Court collectively refers to the following group of Defendants as the "Federal Defendants" for the purposes of this Order: the U.S. Department of Commerce; the National Oceanic and Atmospheric Administration ("NOAA"); Richard Spinrad, in his official capacity as the Under Secretary of the U.S. Department of Commerce for Oceans and Atmosphere and as the Administrator of NOAA; and Gina M. Raimondo, in her official capacity as the U.S. Secretary of Commerce.  (Compl. ¶¶ 14–16.)  The Complaint erroneously misspells Under Secretary Spinrad's surname as "Spinard" throughout. (*See id.* at 1, 5, 22–23, 25–26.)

Accordingly, after careful consideration, FDEP's Motion, FWC's Motion, and the Federal Defendants' Motion are **GRANTED** for the reasons set forth herein.

I.     BRIEF FACTUAL BACKGROUND

Plaintiffs Peter Halmos, International Yachting Charter Services, Inc. ("IYC"), and High Plains Capital Corporation filed a four-count Complaint against the FDEP Defendants, FWC Defendants (collectively, the "Florida Defendants"), and Federal Defendants in which Plaintiffs allege that Defendants breached the terms of two written agreements allegedly entered into by all Defendants in 2007 to settle a maritime dispute. (*See generally* Compl.) Plaintiffs allege that Mr. Halmos's sailing yacht, *S/Y Legacy* (a 158-foot Perini Navy Ketch built for circumnavigation), ran aground in the Great Heron National Wildlife Refuge in the Florida Keys National Marine Sanctuary (the "Sanctuary") on or about October 25, 2005, due to the dangerous conditions caused by Hurricane Wilma. (*Id.* ¶¶ 1–3, 41–55.) Plaintiffs allege that *Legacy* was anchored at a "hurricane hole" location approved by the U.S. Coast Guard, (*id.* ¶ 42), and—due to alleged "[l]atent defects"—the anchors came apart such that they were unusable, and *Legacy* was set adrift, (*id.* ¶¶ 48–49). Later, *Legacy*'s center mast fell and came to rest on her port side, partially submerged. (*Id.* ¶ 50.) Due to seawater intrusion and multiple fires, *Legacy*'s crew was forced to shut down her engines and electronics, leaving her dead in the water. (*Id.* ¶ 52.) Only then did *Legacy* run aground in the Sanctuary. (*Id.* ¶ 55.)

Thereafter, Plaintiffs contend that they found themselves "embroiled in a seemingly never-ending string of investigations, government enforcement actions, and . . . civil and criminal actions [following] *Legacy*'s unintentional grounding . . . ." (*Id.* ¶ 59.) In January 2007, Plaintiffs allege that they and Defendants resolved their disputes by entering into two written agreements that concerned the grounding and salvage of *Legacy*. (*Id.* ¶¶ 60–72.) The

first agreement was between Mr. Halmos and NOAA (the "Halmos-NOAA Agreement"), (*id.* ¶ 62), and the second agreement was between IYC and NOAA (the "IYC-NOAA Agreement") (collectively, the "Agreements"), (*id.* ¶ 63). Plaintiffs attach the Agreements to the Complaint. (*See* Halmos-NOAA Agreement, Compl. Composite Ex. A, ECF No. 1 at 29–42; IYC-NOAA Agreement, Compl. Composite Ex. A., ECF No. 1 at 43–59.)

Pertinent to this action, the Halmos-NOAA Agreement includes the following definitions:

## 1.   Definitions

The following defined terms shall have the meaning stated:

. . . .

1.2     The term "Subject Matter of this AGREEMENT" means the grounding of *S/Y Legacy* in the SANCTUARY on or about October 24, 2005, the time *S/Y Legacy* has remained grounded there, and the salvage/recovery/removal operation to remove *S/Y Legacy* from the SANCTUARY.

. . . .

1.4     The term "NOAA" means the National Oceanic and Atmospheric Administration. This includes NOAA acting in all of its capacities, including but not limited to that of Natural Resource Trustee and Sanctuary manager of the SANCTUARY.

1.5     The term "FLORIDA" means the State of Florida, including all of its agencies and departments.

1.6     The term "PARTIES" or "PARTY" to this AGREEMENT refers *only to* PETER HALMOS AND AFFILIATES, NOAA, and FLORIDA *(to the extent that FLORIDA has executed this AGREEMENT)*, collectively or individually.

(Halmos-NOAA Agreement §§ 1.2, 1.4–.6 (emphasis added).)   The IYC-NOAA Agreement includes identical language, except section 1.6 substitutes Mr. Halmos with IYC. (*Compare* Halmos-NOAA Agreement §§ 1.2, 1.4–.6, *with* IYC-NOAA Agreement §§ 1.2, 1.4–.6.)   In the

3

Agreements, the "PARTIES" further agreed that they would cooperate in any action brought by

or against a Non-Party:

**6.     Cooperation**

6.1     Should any Non-Party at any time assert any claim or bring any action against one of the PARTIES herein and/or should any of the PARTIES assert any claim or bring any action against a Non-Party directly or indirectly arising from, relating to and/or concerning the Subject Matter of this AGREEMENT, the other PARTIES shall cooperate with the PARTY against or by whom such a claim is asserted or action brought, to the maximum extent not expressly prohibited by law, to defend against such claim or action and to seek any and all lawful redress against any Non-Party that is not expressly prohibited by law.  NOAA and PETER HALMOS [and IYC] will cooperate in all respects to effectuate the purposes and performance specified in this Agreement.

(Halmos-NOAA Agreement § 6.1; IYC-NOAA Agreement § 6.1.)  If there is a breach, the

Agreements provide as follows:

4.9     Should any PARTY breach this AGREEMENT by directly or indirectly asserting any CLAIM released by that PARTY herein against any other PARTY, and/or in any way insinuating indirectly what is prohibited by this AGREEMENT from being done directly, then the release provided by the PARTY against whom such a CLAIM is asserted or in any manner enforced shall become null and void and of no benefit to the PARTY asserting such CLAIM.  The release of the PARTY wrongfully so doing shall remain valid against whom the wrongful CLAIM is brought.  In such event, the breaching PARTY shall be liable for damages, injuries, costs and expenses, including reasonable attorneys, experts, researchers, consultants, investigators, and advisors fees, through all available appeal [sic], to the non-breaching party to be determined in a lawful tribunal by a constitutionally constituted jury applying a 'preponderance of the evidence' standard of proof.

(Halmos-NOAA Agreement § 4.8; IYC-NOAA Agreement § 4.8.)  The Agreements further

provide that the non-breaching party may seek specific performance of the Agreements.

(Halmos-NOAA Agreement § 13; IYC-NOAA Agreement § 14.)

Pertinent to this Order, the Agreements contain the following provision:

This AGREEMENT, and all consideration and benefits provided for herein, shall be binding and in full force and effect upon the signature of both PETER HALMOS and NOAA if duly executed by PETER HALMOS and NOAA no later

> than midnight p.m. EST January 8, 2007. *Should FLORIDA not execute this AGREEMENT (herein any non-signatory is referred to as a "Non-Party") no later than January 31, 2007, the release contained in Paragraph 4.2 above this AGREEMENT, and any and all other alleged restriction or adverse affect* [sic] *to PETER HALMOS'S rights, claims and defenses against all Non-Parties, including but not limited to FLORIDA, shall become null and void as to all Non-Parties only, but shall remain in full force and effect as to NOAA and PETER HALMOS AND AFFILIATES.* PETER HALMOS AND AFFILIATES hereby expressly reserve all of their rights, CLAIMS, all other claims, and defenses as to each Non-Party, including, but not limited to, any CLAIM, and all other claims, for conspiracy or collusion, as if this AGREEMENT did not exist. Moreover, as to any such Non-Party, PETER HALMOS AND AFFILIATES expressly deny any waiver whatsoever and no waiver can be implied or construed. The PARTIES acknowledge and agree that time is of the essence.

(Halmos-NOAA Agreement § 4.4 (emphasis added); *see* IYC-NOAA Agreement § 4.4 (emphasis added) (substituting Mr. Halmos with IYC throughout.) Neither of the Agreements provided an address or contact information for the State of Florida but did so for Mr. Halmos, IYC, and NOAA. (*See* Halmos-NOAA Agreement § 15; IYC-NOAA Agreement § 16.) Although Plaintiffs allege that the State of Florida was a "PARTY" to the Agreements, (*e.g.*, Compl. ¶¶ 61–63), the State of Florida did not execute the Agreements, (*see* Halmos-NOAA Agreement § 18; IYC-NOAA Agreement § 18).

Plaintiffs allege that they, despite entering into the Agreements, continue to remain involved in a "series of investigations, regulatory actions, civil litigation, and criminal prosecutions." (Compl. ¶ 73.) In support of this allegation, Plaintiffs only state that, on March 25, 2021, Mr. Halmos had visited a private home in his search to find a new location to dock *Legacy* "following its eviction from its dock in Key West, Florida," when Mr. Halmos fell and "suffered a traumatic brain injury . . . ." (*Id.* ¶ 74–75.) Then, Plaintiffs state that "[t]his lawsuit seeks to bring [Plaintiffs] the peace [they] contracted for in 2007." (*Id.* ¶ 76.) Plaintiffs also state that Mr. Halmos, IYC, and other businesses Mr. Halmos controls "are currently the subject[s] of two lawsuits pending in the Circuit Court of Monroe County, Florida." (*Id.* ¶ 85.)

Plaintiffs allege that Defendants breached the Agreements because Defendants failed to cooperate with Plaintiffs in their defense of those two unidentified actions.   (*Id.* ¶ 86.)

Therefore, by this action, Plaintiffs seek to strictly enforce the terms of the Agreements because, otherwise, they would continue to suffer damages. (*See id.* ¶ 86–88.)  Specifically, the Complaint sets forth four counts: breach of contract (Count I), (*id.* ¶ 77–88); breach of the implied covenant of good faith and fair dealing (Count II), (*id.* ¶ 89–95); specific performance (Count III), (*id.* ¶ 96–101); and injunctive relief (Count IV), (*id.* ¶ 102–07).[4]

## II.   LEGAL STANDARDS

### A.   *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Motions made pursuant to Federal Rule of Civil Procedure 12(b)(1) attack a district court's subject matter jurisdiction to consider the case before it.   Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of subject matter jurisdiction "can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)).   Where the attack on the complaint is facial, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." *Id.* (quoting *Williamson*, 645 F.2d at 412).   A facial attack on a complaint requires a court to look and see if the plaintiff "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).   When the attack on a complaint is factual, however,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its

---

[4]   As discussed in more detail herein, Counts III and IV of the Complaint are not independent causes of action. *Infra* Part III.B.2.

very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence*, 919 F.2d at 1529). The FDEP Defendants' Motion, FWC Defendants' Motion, and Federal Defendants' Motion attack Plaintiffs' allegations concerning subject matter jurisdiction on the face of the Complaint; therefore, this Court takes the well-pleaded allegations in the Complaint as true. *See Lawrence*, 919 F.2d at 1529.

### B.   *Motion to Dismiss for Failure to State a Claim*

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555.

When ruling on Rule 12(b)(6) motion, a court must "accept the factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff . . . ." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (first citing *Twombly*, 550 U.S. at 570; and then citing *Iqbal*, 556 U.S. at 678). Courts are, nevertheless, "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)). "Factual allegations must be enough to raise a right to relief above the speculative

level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (cleaned up).

Attachments to a pleading become part of the pleading "for all purposes." Fed. R. Civ. P. 10(c). Therefore, a court may "consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ." *Hoefling v. City of Mia.*, 811 F.3d 1271, 1277 (11th Cir. 2016) (citing *Crenshaw v. Lister*, 566 F.3d 1283, 1292 (11th Cir. 2009)). "[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Id.* (citing *Crenshaw*, 566 F.3d at 1292). Hence, "a litigant may be defeated by his own evidence, *the pleader by his own exhibits* . . . ." *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (emphasis added) (quoting *Simmons v. Peavy-Welsh Lumber Co.*, 133 F.2d 812, 813 (5th Cir. 1940)). "The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." *Hoefling*, 811 F.3d at 1277 (citing *Simmons*, 133 F.2d at 813).

## III.   DISCUSSION

Now, Defendants separately move to dismiss the Complaint on several grounds. The Florida Defendants move to dismiss the Complaint because (1) Plaintiffs' claims against them are barred by the Eleventh Amendment to the U.S. Constitution, (2) this Court has no pendent jurisdiction over the Florida Defendants, and (3) Plaintiffs failed to state claims for relief against them because they are not parties to the Halmos-NOAA Agreement or IYC-NOAA Agreement. (FDEP Defs.' Mot. 3–7, ECF No. 9; FWC Defs.' Mot. 2–7, ECF No. 11.) The Federal Defendants move to dismiss the Complaint for failure to state claims for which relief could be granted because Plaintiffs' allegations are insufficiently pleaded, and the United States is the only proper Defendant. (Fed. Defs.' Mot. 5–9, ECF No. 16-1.) This Court addresses the FDEP

Defendants' Motion and FWC Defendants' Motion before turning to the Federal Defendants' Motion.

**A.**    ***The FDEP Defendants' Motion and FWC Defendants' Motion***

The Florida Defendants move on the same three grounds: (1) the Eleventh Amendment bars Plaintiffs' claims against them, (2) this Court has no pendent jurisdiction over them, and (3) Plaintiffs cannot state claims for relief against them because they are not parties to the Agreements.[5]  (FDEP Defs.' Mot. at 3–6; FWC Defs.' Mot. 4–7.)  Plaintiffs argue in opposition that (1) their claims against the Florida Defendants can proceed under the *Ex parte Young* doctrine[6] because Plaintiffs' claims seek equitable relief; (2) because the Florida Defendants are not immune from suit under the *Ex parte Young* doctrine, this Court may exercise pendent jurisdiction over the Florida Defendants; and (3) they sufficiently pleaded claims against the Florida Defendants pursuant to the terms of the Agreements.  (Pls.' Resp. FDEP Defs.' Mot. 5–9, ECF No. 14; Pls.' Resp. FWC Defs.' Mot. 5–9, ECF No. 15.)  This Court agrees with Defendants.

**1.    ELEVENTH AMENDMENT SOVEREIGN IMMUNITY**

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*. 563 U.S. 247, 253 (2011).  "Waiver of [a] state's constitutional immunity must appear clearly and will not be easily implied." *Jagnandan v. Giles*, 538 F.2d 1166, 1177 (5th Cir. 1976).  And a state "may waive its sovereign immunity at its pleasure . . . ." *Stewart*, 563 U.S. at 253 (citing *Coll. Sav. Bank. v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675–76 (1999)).  Even still, this Court may not entertain a suit against a state "absent waiver or valid abrogation . . . ." *Id.*  The test for "determining whether a

---

[5]    To the extent the FWC Defendants move to join the FDEP Defendants' Motion, the FWC Defendants' Motion is **GRANTED**.

[6]    The doctrine arises from the seminal Supreme Court decision *Ex parte Young*, 209 U.S. 123, 160 (1908).

State has waived immunity from federal-court jurisdiction is a stringent one. . . . Generally, [a court] will find a waiver either if the State voluntarily invokes our jurisdiction, . . . or else if the State makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." *Coll. Sav. Bank*, 527 U.S. at 675–56 (citations omitted) (first citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); then citing *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906); and then citing *Great N. Life Ins. v. Read*, 322 U.S. 47, 54 (1944)).

Here, Plaintiffs concede that the Eleventh Amendment would bar Plaintiffs' claims against the Florida Defendants were it not for the *Ex parte Young* doctrine. (Pls.' Resp. FDEP Defs.' Mot. 5–8, ECF No. 14; Pls.' Resp. FWC Defs.' Mot. 5–8, ECF No. 15.)  In other words, Plaintiffs' sole argument in opposition to the Florida Defendants' Eleventh Amendment immunity defense is that the *Ex parte Young* doctrine allows claims like those Plaintiffs allege in the Complaint to proceed irrespective of the Eleventh Amendment.  But Plaintiffs miss the mark.

"Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  The *Ex parte Young* doctrine allows for lawsuits alleging a violation of the U.S. Constitution or federal statutes "against a state official in his official capacity for injunctive relief on a prospective basis . . . ." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  The doctrine "has no application in suits against the States and their agencies," like the FDEP and FWC.  *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Eubank v. Leslie*, 210 F. App'x 837, 844–45 (11th Cir. 2006) (citing *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985)).  Therefore, the Eleventh Amendment bars Plaintiffs' claims against the FDEP and FWC, so—at a minimum—the FDEP and FWC must be dismissed.  *See, e.g., Harden*, 760 F.2d at 1163–64

(affirming district court's grant of summary judgment to state agencies on Eleventh Amendment grounds); *Eubank*, 210 F. App'x at 845 (affirming district court's dismissal under Eleventh Amendment in state agency's favor because *Ex parte Young* doctrine did not apply to claims against state agency).

As it relates to the individual Florida Defendants that Plaintiffs sue in their official capacity, the Complaint does not state a claim to which the *Ex parte Young* doctrine applies. At bottom, the *Ex parte Young* doctrine is the "link between state sovereign immunity and the *vindication of federal rights.*" *In re Levin*, 384 B.R. 308, 313–14 (S.D. Fla. 2002) (emphasis added) (quoting *In re Richmond Health Care, Inc.*, 243 B.R. 899, 907 (S.D. Fla. 2000)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint *alleges an ongoing violation of federal law* and seeks relief properly characterized as prospective.'" *Version Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (emphasis added) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). In determining whether the *Ex parte Young* doctrine applies, this Court does not analyze the merits of Plaintiffs' claims. *Id.* at 646 (citing *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 281); *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 281 ("*An allegation of an ongoing violation of federal law* where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." (emphasis added)). The Complaint sets forth four causes of action[7] arising from the breach of the Agreements—nowhere in the Complaint or in any of the briefing do Plaintiffs allege or argue that the Complaint seeks to vindicate any federal right. (*See generally* Compl.) Therefore, the *Ex parte Young* doctrine is inapplicable here, and the Complaint must be

---

[7]    As discussed in more detail herein, Counts III and IV of the Complaint are not independent causes of action. *Infra* Part III.B.2.

dismissed as to the Florida Defendants. *See Gill v. McCollum*, 361 F. App'x 69, 70–71 (11th Cir. 2010) (affirming dismissal on Eleventh Amendment grounds because plaintiff's state-law contract claim did not trigger *Ex parte Young* doctrine); *Davis v. Jackson*, 09-cv-1070, 2010 WL 2836688, at *2 (M.D. Fla. July 19, 2010) (dismissing complaint as barred under Eleventh Amendment because no federal right was at issue). And, because this action is subject to dismissal on Eleventh Amendment immunity grounds, this Court does not have pendent jurisdiction over this action. *See, e.g., Oneida Cnty. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 251 (1985) ("The Eleventh Amendment forecloses . . . the application of normal principals of ancillary and pendent jurisdiction where claims are pressed against the State." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment."); *Terrell v. United States*, 783 F.2d 1562, 1565–66 (11th Cir. 1986).

Accordingly, the FDEP Defendants' Motion, (ECF No. 9), and FWC Defendants' Motion, (ECF No. 11), are **GRANTED**.  The Complaint is **DISMISSED WITHOUT PREJUDICE** as to the Florida Defendants for lack of subject matter jurisdiction.[8]

### 2.    FAILURE TO STATE A CLAIM

Even were this Court to have jurisdiction over Plaintiffs' claims against the Florida Defendants, the Complaint would still be subject to dismissal.  In the Complaint, Plaintiffs fail to state claims stemming from an alleged breach of contract against the Florida Defendants because, by the plain and unambiguous language in the Agreements, the State of Florida is not a

---

[8]    Dismissals on sovereign immunity grounds are dismissals for lack of subject matter jurisdiction, which are without prejudice. *See, e.g., Guevara v. Republic of Peru*, 608 F.3d 1297, 1300 (11th Cir. 2010) (holding that district court erred in dismissing claim on sovereign immunity grounds with prejudice and remanded for dismissal without prejudice for lack of subject matter jurisdiction).

"PARTY" to the Agreements.   (*See* Halmos-NOAA Agreement §§ 4.4, 18; IYC-NOAA Agreement §§ 4.4, 18.)

Plaintiffs cannot sue the Florida Defendants for breaching obligations arising from the Agreements because the Florida Defendants are "Non-Parties" to the Agreements. *See Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004) ("Unless a person is a party to a contract, that person may not sue—or, for that matter, be sued—for breach of that contract where the non-party has received only an incidental or consequential benefit of the contract."); *see also Sec. Mut. Cas. Co. v. Pacura*, 402 So. 2d 1266, 1268 (Fla. 3d DCA 1981) ("[T]o be considered a third party beneficiary to a contract, the parties to the contract must clearly intend its benefits extend to the third party.").   The same is true for the Florida Defendants: As non-parties to the Agreements, the Florida Defendants cannot sue Plaintiffs for breach of the Agreements. *See Halliday*, 873 So. 2d at 403; *Cibran Enters, Inc. v. BP Prods. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1251 (S.D. Fla. Feb. 24, 2005) ("It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for its breach." (quoting *White v. Exchange Corp.*, 167 So. 2d 324, 326 (Fla. 3d DCA 1964))).   To be sure, the Agreements expressly state that the State of Florida is a "PARTY" to the Agreements *only* "to the extent that FLORIDA has executed" the Agreements.   (Halmos-NOAA Agreement § 1.6; IYC-NOAA Agreement § 1.6.)  Further, the Agreements expressly state that the State of Florida is a "Non-Party" to the Agreements if it did not execute the Agreements on or before a date certain. (Halmos-NOAA Agreement § 4.4; IYC-NOAA Agreement § 4.4.)  While the Complaint alleges that the Florida Defendants are "PARTIES" to the Agreements, the plain language of the Agreements attached to the Complaint contradict those conclusory allegations and would still require this Court to dismiss the Complaint as to the Florida Defendants for failure to state a

claim.  *See Gill ex rel. K.C.R.*, 941 F.3d at 511 ("[A] litigant may be defeated by his own evidence, *the pleader by his own exhibits*' . . . ." (emphasis added) (citing *Simmons*, 133 F.2d at 813)).

**B.**    ***The Federal Defendants' Motion***

The Federal Defendants move to dismiss the Complaint because (1) the Complaint fails to state claims stemming from any alleged breach of the Agreements, and (2) the United States, not the Federal Defendants, is the only proper defendant pursuant to the Agreements.  (Fed. Defs.' Mot. 5–9.)  Plaintiffs argue that they met their burden to plead claims stemming from the alleged breach of the Agreements and that they are not opposed to amending the Complaint to list only the United States as the only federal party.  (Pls.' Resp. Fed. Defs.' Mot. 2–5, ECF No. 19.)  This Court addresses whether the Federal Defendants are appropriate parties to this action before addressing whether the allegations in the Complaint state plausible claims to relief arising from the Agreements.

**1.    THE UNITED STATES IS THE APPROPRIATE DEFENDANT IN THIS ACTION**

The Federal Defendants concede that "there is *prima facie* evidence of a contract in this matter." (Fed. Defs.' Mot. 7.)  The question at hand is, therefore, against whom may Plaintiffs seek to enforce the terms of the Agreements in the event of a breach?  To state a breach of contract action against a federal agency, a plaintiff must sue pursuant to an express waiver of sovereign immunity.  *See Renfro v. Shinseki*, No. 13cv38, 2013 WL 2292026, at *6 (N.D. Fla. May 24, 2013) ("[T]o establish this court's jurisdiction over a dispute involving a settlement agreement to which the government is a party, a plaintiff must show (1) the court has subject matter jurisdiction over the issues raised by the dispute; (2) the United States has waived sovereign immunity for suits of that kind; and (3) the United States has consented to be sued in

that particular court." (citing *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 178 (D.D.C. 2007))); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982) ("The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case and cannot be waived or otherwise conferred upon the court by the parties.").  The Federal Defendants argue that, because the Agreements are not agreements made pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101–7109 (the "CDA"), they must be maritime contracts under the Suits in Admiralty Act, 46 U.S.C. §§ 30901–30918 (the "SAA").  (Fed. Defs.' Mot. 7–9.)

On the one hand, the CDA applies to the following types of express or implied contracts "made by an executive agency for[:] (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property; or (4) the disposal of personal property."  § 7102.  The Agreements do not fall within the CDA's ambit.  *See id.*  On the other hand, the SAA authorizes a plaintiff to file a civil action in admiralty against the United States if the subject of the dispute involved a maritime dispute.  *See* § 30903; *Savage Servs. Corp. v. United States*, 25 F.4th 925, 938 (11th Cir. 2022) ("The SAA 'broadly waives the Government's sovereign immunity' for admiralty claims." (quoting *Henderson v. United States*, 517 U.S. 654, 656 (1996))).  The SAA further provides that, "[i]f a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States . . . whose act or omission gave rise to the claim."  § 30904.

Here, the Federal Defendants argue that the Agreements "are likely maritime contracts

and fall within [this] Court's admiralty jurisdiction. (Fed. Defs.' Mot. 7.)   While Plaintiffs do not expressly embrace this position, they do not argue that the SAA does not govern the Agreements and state that they "are not opposed to amending the Complaint to list only the United States . . . as the only federal party [so long as the United States is barred] from later claiming that it cannot offer anything less than full relief in this litigation." (Pls.' Reps. Fed. Defs.' Mot. 5.)

Although this action was not filed pursuant to this Court's admiralty jurisdiction, this Court must determine whether the Agreements are maritime contracts. *See Showers v. Carnival Corp.*, No. 11-23909-CIV, 2012 WL 13134058, at *3 (S.D. Fla. July 16, 2002) ("[E]ven where the parties are in agreement that federal admiralty jurisdiction applies to their dispute, 'the Court "has an independent duty to ensure admiralty jurisdiction exists before applying admiralty law."'" (quoting *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1347 (S.D. Fla. 2008))); *cf. Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278, 1282 (S.D. Fla. 2007) (finding that admiralty law governed court's consideration of defendant's motion to dismiss even where plaintiff filed suit in federal court on basis of diversity jurisdiction); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367, 1373 (S.D. Fla. 2002) ("Even when, as here, the parties allege diversity of citizenship as a basis of subject matter jurisdiction, if admiralty jurisdiction also exists, federal maritime law governs the substantive issues in the case." (citing *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990))).   Settlement agreements, like the Agreements here, are maritime contracts where the primary purpose of the agreement, aside from settling an underlying admiralty claim, concerns traditional maritime activities such as repairing, recovering, or maintaining a vessel. *See F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1354–55 (S.D. Fla. 2007) (collecting cases).

There is no question that the "Subject Matter" of the Agreements relates directly to "the grounding of *S/Y Legacy* in the SANCTUARY on or about October 24, 2005, the time *S/Y Legacy* has remained grounded there, and the *salvage/recovery/removal operation* to remove *S/Y Legacy* from the SANCTUARY." (Halmos-NOAA Agreement §§ 1.2 (emphasis added); IYC-NOAA Agreement §§ 1.2 (emphasis added).)   The Agreements are, therefore, settlement agreements related to salvage operations, and "[c]laims arising out of salvage operations efforts to rescue or recover ships disabled or abandoned at sea or to retrieve their cargo are, *unquestionably*, within the admiralty jurisdiction of the federal courts." *See Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 566 (5th Cir. Mar. 1981).[9]  Accordingly, this Court finds that the Agreements are maritime contracts, and—absent any argument or evidence to the contrary at this stage in the proceedings—the SAA serves as the United States's only possible waiver of sovereign immunity with regard to the Agreements. *See* § 30903.

The SAA, however, only expressly waives sovereign immunity over the United States—not its agencies or their officers and employees. *See* § 30904; *Villarreal v. United States*, No. 16-CV-21105, 2016 WL 10952527, at *3 (S.D. Fla. July 26, 2016) ("Section 30904, on its face, only waives sovereign immunity with respect to the United States and does not waive immunity with respect to United States agencies, as there is no language whatsoever in the SAA to 'unequivocally express' a waiver of United States agencies' sovereign immunity." (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980))); *see also Mitchell*, 445 U.S. at 538 ("A waiver of sovereign immunity 'cannot be implied but *must be unequivocally expressed.*'" (quoting *United States v. King*, 395 U.S. 1, 4 (1969))).  In accordance with the plain language of

---

[9]    All decisions of the Fifth Circuit rendered before close of business on September 30, 1981, are binding precedent on courts in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

the SAA, therefore, this Court finds that the Federal Defendants, as agencies and officers of the United States, are not proper parties to this action and must be dismissed for lack of subject matter jurisdiction, and Plaintiffs must substitute the United States for the Federal Defendants in any future pleadings.

Accordingly, the Federal Defendants' Motion is **GRANTED** in this regard.   The Complaint is **DISMISSED WITHOUT PREJUDICE** as to the Federal Defendants.[10]  Plaintiffs are granted leave to amend the Complaint to substitute the United States as the appropriate defendant under the SAA.

### 2.    THE COMPLAINT FAILS TO SUFFICIENTLY STATE CLAIMS STEMMING FROM THE FEDERAL DEFENDANTS' ALLEGED BREACHES OF THE CONTRACT

Irrespective of whether the Federal Defendants are proper parties in this action or whether the Agreements are maritime contracts, the Federal Defendants move to dismiss the Complaint for failure to state claims for relief.  (Fed. Defs.' Mot. 5–7.)  Plaintiffs argue that they met their burden at the pleading stages as evinced by the Federal Defendants' concession "that there is *prima facie* evidence of a contract in this matter."  (Resp. Fed. Defs.' Mot. 2.)  Plaintiffs devote their response in opposition to the Federal Defendants' Motion to the argument that "[t]he Complaint spans more than one hundred paragraphs that detail the nature of the relationship between [the Parties], the substance of the [P]arties' contractual agreements, and the [Parties'] obligations.  (*Id.*)  But Plaintiffs' argument again misses the mark.  This Court agrees with Defendants: Viewing the facts in the light most favorable to Plaintiffs—this Court finds that Plaintiffs fail to sufficiently plead claims for relief stemming from Defendants' alleged *breach* of the Agreements, and therefore, the Complaint would still be due to be dismissed for failure to state a claim.

---

[10]    *See supra* note 8.

Preliminarily, while not addressed by the Parties, Plaintiffs' specific performance (Count III) and injunctive relief (Count IV) "claims" are remedies, not independent causes of action. *See, e.g.*, *Exum v. Nat'l Tire & Battery*, 437 F. Supp. 3d 1141, 1159 (S.D. Fla. 2020) ("Injunctive relief . . . is a remedy, not a separate cause of action." (citing *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018); *Great Lakes Ins. SE v. Lassiter*, No. 21-21452-CIV, 2022 WL 1288741, at *16 (S.D. Fla. Apr. 29, 2022) ("[The plaintiff's] claim fails because specific performance is a remedy, not a cause of action." (citing *La Gorge Palace Condo. Ass'n v. QBE Ins.*, 733 F. Supp. 2d 1332, 1334 (S.D. Fla. 2010))). Therefore, Counts III and IV of the Complaint must be **DISMISSED** with leave for Plaintiffs to, if they so choose, request specific performance and injunctive relief as remedies in their breach of contract (Count I) and breach of the implied covenant of good faith (Count II) claims. *See Sourcing Sols USA, Inc. v. Kronos Am., LLC*, No. 10-23476-CIV, 2011 WL 13223514, at *4 (S.D. Fla. Jan. 26, 2011) ("Plaintiff may replead its complaint to include injunctive relief as the relief sought for some of its claims."); *cf. N.Y. Packaging II LLC v. Private D Cap. Grp.*, No. 22-20276-CIV, 2023 WL 2306690, at *13 (S.D. Fla. Mar. 1, 2023) (dismissing alter ego claim as an improperly pleaded independent cause of action and granting plaintiff leave to amend complaint to reassert theory of liability in substantive claims).

With respect to Counts I and II, Plaintiffs only provide conclusory allegations that Defendants breached their obligations under the Agreements.  (Compl. ¶¶ 87, 94.)  Plaintiffs allege that Defendants failed to comply with their obligation under the Agreements to "(1) cooperate with [Plaintiffs] in their defense of [certain legal] actions and (2) refrain from providing any form of aid or support of the non-parties bringing [those] actions[,]" (*id.* ¶ 86), and "failed to honor, perform, and comply with their obligations as defined and set forth in [sections]

3 through of the [Agreements,]" (*id.* ¶ 92), and as a result, Plaintiffs "have been exposed to the inconvenience and costs of multiple investigations, regulatory actions, civil lawsuits, and criminal prosecutions in Monroe County, Florida[,]" (*id.* ¶ 93). But Plaintiffs provide absolutely no factual support for these allegations: Plaintiffs do not (1) identify the state court actions, regulatory actions, or investigations; (2) provide any information concerning the subject matters of the state court actions, regulatory actions, or investigations; (3) explain—to any degree—how any of the state court actions, regulatory actions, or investigations concern or relate to the subject matter of the Agreements; or (4) detail with any specificity what Defendants did or did not do to breach Agreements. Instead, Plaintiffs' conclusory allegations "amount to nothing more than a formulaic recitation of the [breach] element[] of a breach of contract [claim] and fall short of the factual content needed to establish a plausible claim for relief." *See Libo Bay Manor Ass'n v. Chubb Custom Ins.*, No. 20-cv-21600, 2020 WL 8413429, at *1 (S.D. Fla. Aug. 10, 2020) (collecting cases); *cf. Perez Cisneros v. Fed. Ins.*, No. 19-CV-22273, 2019 WL 3407131, at *2 (S.D. Fla. June 25, 2019) (granting motion to dismiss breach-of-contract claim because complaint failed to allege "the type of loss [the p]laintiff suffered . . . what obligations [the d]efendant had under the [contract], how [the d]efendant breached those obligations, and what specific damages [the p]laintiff has suffered.").

Accordingly, this Court finds that Counts I and II of the Complaint would still be due to be dismissed without prejudice for failure to state a claim.

IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.       The FDEP Defendants' Motion, (ECF No. 9); FWC Defendants' Motion, (ECF No. 11); and Federal Defendants' Motion, (ECF No. 16; ECF No. 16-1), are **GRANTED**

as set forth herein.

2.      The Complaint, (ECF No. 1), is **DISMISSED WITHOUT PREJUDICE** as set

forth herein.

3.      The Clerk is **DIRECTED** to **TERMINATE** the following Defendants:

     a.      The Florida Department of Environmental Protection;
     b.      Shawn Hamilton;
     c.      the Florida Fish and Wildlife Conservation Commission;
     d.      Eric Sutton;[11]
     e.      Thomas Reinert;
     f.      Rodney Barreto;
     g.      Robert A. Spottswood;
     h.      Steven Hudson;
     i.      Gary Nicklaus;
     j.      Gary Lester;
     k.      Sonya Rood;
     l.      Michael W. Sole;
     m.     the U.S. Department of Commerce;
     n.      the National Oceanic and Atmospheric Administration;
     o.      Richard Spinard;[12] and
     p.      Gina M. Raimondo.

4.      **On or before Thursday, April 20, 2023**, Plaintiffs **SHALL** file an amended

complaint that addresses the deficiencies outlined herein.  **Plaintiffs' failure to comply**

**with this Order will result in appropriate sanctions, including dismissal without**

**prejudice, without further warning.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23 day of March 2023.

                                 _____
                                 JOSE E. MARTINEZ

Copies provided to:                       UNITED STATES DISTRICT JUDGE
All Counsel of Record

---

[11]   Only to the extent Mr. Sutton is included as a Defendant in the case caption because Mr. Eason was "automatically substituted as a party . . . ."  *See* Fed. R. Civ. P. 25(d); *supra* note 2.  For clarity's sake, the Complaint is also **DISMISSED WITHOUT PREJUDICE** as to Mr. Eason, and the clerk is **DIRECTED** to **TERMINATE** Mr. Eason to the same extent as the other Florida Defendants as if he were named in the Complaint.

[12]   This Court, again, notes that the Complaint misspells Under Secretary Spinrad's surname.  *Supra* note 2.