**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CV-10006-MARTINEZ/STRAUSS**

**PETER HALMOS,** *et al.*,

       Plaintiffs,

v.

**UNITED STATES OF AMERICA,**

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court upon the following motions:

(1) *Pro Se* Plaintiff's Fed. R. Civ. P. 54(b) Motion for Reconsideration from Omnibus Order and Incorporated Memorandum of Law ("Motion for Reconsideration") [DE 50];

(2) Motion to Adopt [DE 51]; and

(3) Defendant United States of America's Second Motion to Dismiss Plaintiffs' Amended Complaint ("Renewed Motion to Dismiss") [DE 57].

Pursuant to 28 U.S.C. § 636(b) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, this case has been referred to me to take all necessary and proper action as required by law with respect to the foregoing motions [DE 69].  I have reviewed the foregoing motions,[1] the briefing thereon, and all other pertinent portions of the record.  For the reasons

---

[1] Although I evaluate the merits of the motions below, I note that the Motion for Reconsideration [DE 50] and *Pro Se* Plaintiff Peter Halmos' Memorandum of Law in Opposition to Defendant United States' Second Motion to Dismiss Plaintiffs' Amended Complaint [DE 60] (and certain other recent filings by Plaintiff Peter Halmos) appear to be unauthorized *pro se* filings.  As recently as February 7, 2024, Attorney Guy Lewis appeared in this action as counsel for Plaintiff Peter Halmos.  *See* [DE 45] (motion filed by Mr. Lewis on behalf of Mr. Halmos).  Although Mr. Halmos subsequently filed a Notice of Intent to Proceed Pro Se [DE 49], Mr. Lewis never moved to withdraw as counsel for Mr. Halmos.  Significantly, this Court's local rules "prohibit a represented party from appearing or acting on his or her own behalf unless the district court first enters an order of substitution."  *Ruiz v. Wing*, 991 F.3d 1130, 1144 (11th Cir. 2021) (citing S.D. Fla. L.R. 11.1(d)(4)).

discussed herein, I respectfully **RECOMMEND** that the Motion for Reconsideration [DE 50] be **DENIED**, that the Motion to Adopt [DE 51] be **GRANTED** to the extent it seeks to adopt the arguments made in the Motion for Reconsideration but **DENIED** insofar as it seeks reconsideration,[2] and that the Motion to Dismiss [DE 57] be **GRANTED**.

## BACKGROUND

In October 2005, Plaintiff Peter Halmos ("Halmos") and others were aboard Plaintiffs' sailing yacht, *S/Y Legacy*, when it ran aground in the Great White Heron National Wildlife Refuge in the Florida Keys National Marine Sanctuary ("Sanctuary") as a result of the dangerous conditions caused by Hurricane Wilma. Amended Complaint [DE 30] ¶¶ 1-4, 40-41; *see also* [DE 30-1] at 5 ("[O]n or about October 24, 2005, S/Y *Legacy* was involuntarily, unintentionally, and of necessity forced aground in the SANCTUARY by, during, and as a result of Hurricane Wilma."). Fortunately, Halmos and everyone else on board survived. *S/Y Legacy*, however, was not so lucky; it suffered catastrophic damage. Amended Complaint ¶¶ 1, 3, 12, 34-40.

Following the grounding of *S/Y Legacy* in the Sanctuary, disputes arose between the parties. The parties ultimately entered into two agreements (the "Agreements") to resolve those disputes and "forever buy their peace" – (1) an Agreement and Mutual Release between Halmos and the National Oceanic and Atmospheric Administration ("NOAA") ("Halmos Agreement") and (2) an Agreement and Mutual Release between Plaintiff International Yachting Charters, Inc.

---

[2] The Motion to Adopt seems to effectively seek reconsideration of the Dismissal Order for the reasons stated in the Motion for Reconsideration. Aside from the case style and signature block, the one-page Motion to Adopt solely states the following: "COMES NOW THE Plaintiffs, by and through Reizenstein and Associates, PA PA., Philip L. Reizenstein, Esq. and hereby files this motion to adopt on behalf of International Yacht Charter Services and High Plains Capital Corporation the Rule 54 motion for reconsideration filed by Plaintiff pro se Peter Halmos which is docket entry 50." [DE 51].

("IYC") and NOAA ("IYC Agreement").  *See id.* ¶¶ 6-7, 46-73,[3] 85-86, 95; *see also* [DE 30-1] (containing the Agreements).  The Parties to the Halmos Agreement were "PETER HALMOS AND AFFILIATES, NOAA, and FLORIDA (to the extent that FLORIDA has executed this AGREEMENT)."  [DE 30-1] at 2 (§ 1.6).  The Parties to the IYC Agreement were "IYC, NOAA, and FLORIDA (to the extent that FLORIDA has executed this AGREEMENT)."  [DE 30-1] at 16 (§ 1.6).  The State of Florida did not execute either of the Agreements.  *See* [DE 30-1] at 15, 31.

The "Subject Matter" of both Agreements is defined as "the grounding of S/Y *Legacy* in the SANCTUARY on or about October 24, 2005, the time S/Y *Legacy* has remained grounded there, and the salvage/recovery/removal operation to remove S/Y *Legacy* from the SANCTUARY."  [DE 30-1] at 2 (§ 1.2); [DE 30-1] at 16 (§ 1.2).  In this action, Plaintiff alleges violations of the following provisions of the Agreements:

> 5.1    The GOVERNMENTAL ENTITIES further unconditionally, fully, irrevocably and finally agree and covenant forever not to directly or indirectly cause, instigate and/or encourage any other person or entity to engage in such above-referenced conduct including to file, prosecute, commence, institute or continue any administrative enforcement actions, complaint, suit, legal or equitable proceeding, including proceedings before any federal, state or foreign judicial, regulatory or arbitral tribunal or other forum, wherever located, or prosecute, against PETER HALMOS AND AFFILIATES [or IYC], any matter of any and every kind and nature whatsoever, whether known or unknown, and whenever or however occurring, arising directly or indirectly from or having any direct or indirect connection with the Subject Matter of this AGREEMENT.

> 6.1    Should any Non-Party at any time assert any claim or bring any action against one of the PARTIES herein and/or should any of the PARTIES assert any claim or bring any action against a Non-Party directly or indirectly arising from, relating to and/or concerning the Subject Matter of this AGREEMENT, the other PARTIES shall cooperate with the PARTY against or by whom such a claim is asserted or action brought, to the maximum extent not expressly prohibited by law, to defend against such claim or action and to seek any and all lawful redress against any Non-Party that is not expressly prohibited by law.  NOAA and PETER

_____

[3] The Amended Complaint jumps from paragraph 52 to 67.  Then, after paragraph 77, the Amended Complaint returns to paragraph 72.  In other words, it includes two sets of paragraph numbers 72-77.  This citation refers to the first paragraph 73.

HALMOS [and IYC] will cooperate in all respects to effectuate the purposes and performance specified in this Agreement.

6.2     The GOVERNMENTAL ENTITIES agree not to, directly or indirectly through one or more intermediaries, intentionally provide any compensation, benefits, material non-public information concerning PETER HALMOS AND AFFILIATES [and IYC], assistance and/or cooperation to any Non-Party who at any time now and/or in the future asserts any allegation, claim and/or adverse conduct against or toward PETER HALMOS AND AFFILIATES [or IYC], and/or against whom PETER HALMOS AND AFFILIATES [or IYC] asserts any claim and/or allegations, directly or indirectly arising from, relating to and/or concerning the Subject Matter of this AGREEMENT, in any threatened, pending or future event, course of conduct and/or proceeding of every nature  or kind, except to the extent required by law or legal process; and in such instance only after ten (10) days advance written notice to PETER HALMOS AND AFFILIATES [or IYC] of such proposed action (unless a shorter period is ordered by a lawful tribunal) and only after that GOVERNMENTAL ENTITY'S counsel has concluded that such action is required by law and the requested information and/or other legal process is disclosed to PETER HALMOS AND AFFILIATES [or IYC] at such time and manner whereby PETER HALMOS AND AFFILIATES'S [or IYC's] due process rights are fully protected.  The GOVERNMENTAL ENTITIES further agree that they will not directly or indirectly contact or encourage any taxing, enforcement or regulatory agencies and personnel to investigate, audit, take administrative action against, sue, or otherwise assert any claim and/or action against PETER HALMOS AND AFFILIATES [or IYC].

[DE 30-1] at 8-10, 23-25; *see also* Amended Complaint ¶¶ 69-71, 73.

Plaintiffs filed their initial Complaint [DE 1] in this case on January 8, 2022, against (1) NOAA, its administrator (in his official capacity), the U.S. Department of Commerce, and its Secretary (in her official capacity) (collectively, the "Federal Defendants"), and (2) the Florida Department of Environmental Protection ("FDEP"), the Florida Fish and Wildlife Conservation Commission ("FWC"), and various individuals associated with the foregoing agencies (in their official capacities) (collectively, the "Florida Defendants").  *See* [DE 1]; *see also* [DE 27] at 1 nn. 1-3.  The initial Complaint included four counts: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Specific Performance; and (4) Temporary, Preliminary, and Permanent Injunctive Relief.

On March 23, 2023, the Court issued an Omnibus Order on Defendants' Motions to Dismiss ("Dismissal Order") [DE 27], dismissing the Complaint without prejudice.  In dismissing the Complaint, the Court first found that dismissal without prejudice of the Florida Defendants was warranted on Eleventh Amendment sovereign immunity grounds.   [DE 27] at 9-12.  Alternatively, the Court found that the Complaint failed to state a claim against the Florida Defendants because the State of Florida was not a party to the Agreements.  *Id.* at 12-14.  As to the Federal Defendants, the Court found that dismissal without prejudice was warranted because the Federal Defendants are not proper parties to this action.  *Id.* at 14-18.  Instead, the Court explained that the United States is the appropriate party and granted Plaintiffs leave to substitute the United States.  *Id.*  However, the Court also found that even if Plaintiffs had sued the United States, the Complaint still failed to sufficiently state a claim upon which relief could be granted.  *Id.* at 18-20.  The Court explained that for Counts 1 and 2, "Plaintiffs only provide[d] conclusory allegations that Defendants breached their obligations under the Agreements."  *Id.* at 19.  As to Counts 3 and 4, the Court found that specific performance and injunctive relief are remedies, not independent causes of action.  *Id.*  Ultimately, the Court dismissed the Complaint without prejudice and granted Plaintiffs leave to file an amended complaint against the United States wherein Plaintiff could attempt to re-plead Counts 1 and 2.  *See id.* at 18-21.  And the Court permitted Plaintiffs leave to request specific performance and injunctive relief as remedies within Counts 1 and 2.  *Id.* at 19.

On May 10, 2023, Plaintiffs filed their Amended Complaint.  The factual allegations in the Amended Complaint (including the allegations from the Amended Complaint that are discussed above) are largely the same as those in the initial Complaint.  The primary difference between the allegations in the Complaint and Amended Complaint is that the Amended Complaint added

allegations into a new section entitled "Plaintiff Halmos is Charged Criminally and is also Sued in Civil Actions Along with His Corporate Entities in Monroe County, Florida."   Amended Complaint at 16-18.  Beyond the addition of those allegations, Plaintiffs revised related allegations in Counts 1 and 2 (Amended Complaint ¶¶ 90, 99), added the United States as the Defendant, removed all other defendants, removed Counts 3 and 4, added requests for specific performance and injunctive relief in Count 1, and appear to have made a handful of other minor changes.

Defendant filed a motion to dismiss the Amended Complaint.  [DE 33].  On February 6 and 7, 2024, while Defendant's motion to dismiss was pending, Plaintiffs filed motions seeking leave to file a second amended complaint within 45 days.  [DE 44, 45].  The Court permitted Plaintiffs to file a motion for leave to amend (to which Plaintiffs were required to attach their proposed amended pleading) by April 10, 2024.  [DE 46].  Consequently, the Court denied Defendant's motion to dismiss [DE 33] as moot.  [DE 46].  Plaintiffs subsequently sought an additional extension of time to file an amended complaint.  [DE 47].  The Court granted Plaintiffs' request, permitting them to move to amend their complaint "with the proposed attachment attached" by April 17, 2024.  [DE 48].  While the Court extended the deadline to April 17, 2024, it noted that no further extensions would be granted absent exigent circumstances and warned Plaintiffs that failure to comply with the Court's Order [DE 48] "**will result in immediate dismissal of Plaintiffs' claims without prejudice and without further warning.**"  [DE 48].

Plaintiffs, however, never filed a motion for leave to amend or a proposed second amended complaint.  Instead, on April 15, 2024, Halmos filed the Motion for Reconsideration [DE 50], seeking reconsideration of the Dismissal Order [DE 27].  On April 17, 2024, the other Plaintiffs

filed the Motion to Adopt [DE 51].  *See supra* note 2.  Because Plaintiffs did not file a second

amended complaint, Defendant subsequently filed its Renewed Motion to Dismiss [DE 57].[4]

## LEGAL STANDARDS

### A. RECONSIDERATION

Rule 54(b) "governs a district court's reconsideration of interlocutory orders."  *Hornady v.*

*Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024).  As set forth in the rule,

an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the

parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims

and all the parties' rights and liabilities."  *Id.* (quoting Fed. R. Civ. P. 54(b)).  In other words,

"district courts retain plenary power" or "plenary authority 'to reconsider, revise, alter or amend'

a non-final [i.e., interlocutory] order before the entry of final judgment."  *Id.* at 1379-80 (quoting

*Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)).

"Though district courts enjoy plenary *power* to reconsider non-final rulings, they need not

employ plenary *review* when doing so."  *Id.* at 1380 (emphasis in original).  In fact, district courts

should often be hesitant to revisit their earlier interlocutory orders.  *Id.*  "[I]mportant interests of

finality, stability, and predictability underly that justifiable caution."  *Id.*  At the same time, the

showing needed to obtain reconsideration of an interlocutory order under Rule 54(b) is not as

stringent as the showing required under Rules 59(e) and 60(b), which only apply after final

judgment has been entered.  *See id.* at 1379-81.  Nonetheless, district courts have "considerable

---

[4] Although Halmos filed a response [DE 60] to the Renewed Motion to Dismiss, the other plaintiffs filed a motion for extension of time [DE 58] to respond to the Renewed Motion to Dismiss.  I have denied the motion for extension of time by separate order (which will be entered contemporaneously with this Report and Recommendation).  Additionally, Plaintiffs have requested a hearing and discovery in connection with the motions that are the subject of this Report and Recommendation.  My separate order denying the motion for extension of time also denies Plaintiffs' requests for a hearing and discovery.

discretion" under Rule 54(b) and may generally reject "a motion to reconsider an interlocutory order if the movant simply rehashe[s] arguments already considered and rejected." *Id.* at 1381. Moreover, "the more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's request." *Id.* Ultimately, "district courts have discretion to revisit their prior interlocutory orders, considering both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Id.*

### B. MOTION TO DISMISS

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most

favorable to the plaintiff.  *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).   But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

### A.  MOTION FOR RECONSIDERATION

The Motion for Reconsideration seeks reconsideration of two aspects of this Court's Dismissal Order.   First, Plaintiffs contend that the Court erred in dismissing the Florida Defendants.   While Plaintiffs now acknowledge that the State of Florida is not a party to the Agreements (contrary to the allegations of Plaintiffs' initial Complaint), Plaintiffs nevertheless contend that the State of Florida is bound by the Agreements.   Additionally, Plaintiffs contend that the State of Florida waived its sovereign immunity in connection with this action (despite Plaintiffs not espousing that position when they opposed the Florida Defendants' motion to dismiss the initial Complaint).   Second, Plaintiffs contend that the Court erred in finding that the United States is the only proper federal defendant in this action, and consequently, in dismissing the Federal Defendants.

Given that Plaintiffs did not file their Motion for Reconsideration for over a year after the entry of the Dismissal Order, the Court should be hesitant to entertain Plaintiffs' request for reconsideration at all.  *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th at 1380-81 ("[I]n most instances district courts should hesitate before revisiting their earlier interlocutory orders . .

. . [T]he more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's request.").   In any event, the Court should decline to reconsider its dismissal of the Florida Defendants for the reasons discussed in Section 1 below, and the Court should decline to reconsider its dismissal of the Federal Defendants for the reasons discussed in Section 2 below.

### 1.  Florida Defendants

Plaintiffs have failed to establish that reconsideration of the Court's dismissal of the Florida Defendants is warranted.  As discussed herein, the State of Florida and the Florida Defendants are entitled to sovereign immunity in this action such that this suit may not be pursued against them in federal court (if at all).

"[T]he Eleventh Amendment's 'fundamental principle of sovereign immunity limits the grant of judicial authority in Article III.'"  *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)) (alteration adopted).  "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Id.* (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *see also Cassady v. Hall*, 892 F.3d 1150, 1152 (11th Cir. 2018) ("The Eleventh Amendment of the United States Constitution bars suits against states in federal court unless a state has waived its sovereign immunity or Congress has abrogated it." (citation omitted)); *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) ("It is well established that, absent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court.").  The prohibition against suing states in federal

court absent waiver or abrogation by Congress extends to state agencies and other arms of the state. *Cassady*, 892 F.3d at 1153.

"In *Ex parte Young*,[5] the Supreme Court carved out a narrow exception to the States' sovereign immunity when it 'held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law.'" *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011) (quoting *Green*, 474 U.S. at 68). Under the *Ex Parte Young* doctrine, "the only way to avoid the shield of sovereign immunity [] is to bring a suit for prospective injunctive relief against the official charged with enforcing the law." *Schultz*, 42 F.4th at 1314 (citing *Ex Parte Young*, 209 U.S. at 155-56). "*Ex parte Young* requires the allegation of an ongoing and continuous violation of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)).

When the Florida Defendants previously sought dismissal on Eleventh Amendment sovereign immunity grounds, "Plaintiffs' sole argument in opposition to the Florida Defendants' Eleventh Amendment immunity defense [was] that the *Ex Parte Young* doctrine allows claims like those Plaintiffs allege[d] in the Complaint to proceed irrespective of the Eleventh Amendment." [DE 27] at 10; *see also* [DE 14] at 5-8; [DE 15] at 5-8. Thus, as this Court recognized in its Dismissal Order, Plaintiffs effectively "concede[d] that the Eleventh Amendment would bar Plaintiffs' claims against the Florida Defendants were it not for the *Ex Parte Young* doctrine." [DE 27] at 10. But Plaintiffs' *Ex Parte Young* argument failed because Plaintiffs brought state-law breach of contract claims, not claims alleging ongoing violations of *federal* law. *See id.* at 10-12.[6]

---

[5] 209 U.S. 123 (1908).

[6] Additionally, as this Court explained, even if the *Ex Parte Young* doctrine's exception to sovereign immunity did apply here, it would not have permitted Plaintiffs to sue state agencies like

Now, Plaintiffs argue, for the first time in their Motion for Reconsideration, that the Florida Defendants waived their sovereign immunity. Plaintiffs complain that the Court's Dismissal Order did not address whether the Florida Defendants waived their sovereign immunity as to the claims asserted in this case. [DE 50] at 11. Of course, the reason the Court's Dismissal Order did not address the issue of waiver is that Plaintiffs did not raise the issue of waiver in their responses [DE 14, 15] to the Florida Defendants' motions to dismiss. Again, Plaintiffs did not raise the issue of waiver until they filed their Motion for Reconsideration, over a year after the Court entered its Dismissal Order. If Plaintiffs wanted to raise the issue of waiver, they could have and should have done so when they responded to the Florida Defendants' motions to dismiss (in May 2022, nearly two years before Plaintiffs filed their Motion for Reconsideration) – or, at the very least, not over a year after this Court's entry of the Dismissal Order. Indeed, Plaintiffs' argument is not based on any facts or law that arose after their response to the motions to dismiss. Because Plaintiffs failed to raise the issue of waiver sooner, this Court should refuse to entertain the merits of Plaintiffs' waiver argument.

Nonetheless, even if this Court were to consider the merits of Plaintiffs' waiver argument, it should conclude that Plaintiffs' argument fails. The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)). A waiver must be express. *Maynard*, 342 F.3d at 1287. "Waiver may

---

FDEP and FWC. *Id.* at 10-11. Notably, Plaintiffs' Motion for Reconsideration does not seem to dispute this Court's determinations regarding the *Ex Parte Young* doctrine. *See* [DE 50] at 14. Rather, Plaintiffs indicated (in their Motion for Reconsideration) that they would file a second amended complaint by April 17, 2024, in which they would assert a § 1983 claim to overcome the *Ex Parte Young* issues discussed in the Dismissal Order. *See* [DE 50] at 14. Plaintiffs, however, have not filed a second amended complaint, and the deadline this Court set for Plaintiffs to seek leave to amend has long passed.

not be implied." *Sossamon*, 563 U.S. at 284. "[T]he state must make a clear, unequivocal declaration that it intends to submit itself to federal court jurisdiction." *Maynard*, 342 F.3d at 1288 (citing *Coll. Sav. Bank*, 527 U.S. at 676). "A waiver of Eleventh Amendment immunity must specifically permit suits in federal court." *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012) (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990)). "[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation . . . [or] merely by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction.'" *Coll. Sav. Bank*, 527 U.S. at 676 (internal citations omitted). Nor does a state consent to suit in federal court by consenting to "be sued in all courts of law and equity." *Maynard*, 342 F.3d at 1288.

Here, Plaintiffs contend that the State of Florida *expressly* consented to suit in *federal* court because the IYC Agreement states that "the federal court for the Southern District of Florida will have jurisdiction of the parties and this AGREEMENT." [DE 50] at 13 (quoting [DE 30-1] at 27 (§ 9)). But Plaintiffs' argument is unavailing for several reasons. Most significantly, Florida is not a party or signatory to the Agreements. Back to that in a moment.

First, though, Plaintiffs omit several important words in their Motion for Reconsideration. The entire sentence of the IYC Agreement Plaintiffs rely upon states: "For the purposes of enforcement of this AGREEMENT *only*, *IYC agrees* that the federal court for the Southern District of Florida will have jurisdiction of the parties and this AGREEMENT." [DE 30-1] at 27 (§ 9) (emphasis added). So, even if Florida were a party to the IYC Agreement, the foregoing language states that *IYC* agreed this Court would have jurisdiction, not that *the parties* (or the State of Florida) agreed. Thus, the language does not show that the State of Florida (even if it were a party) expressly and unequivocally agreed to submit itself to federal court jurisdiction.

13

Plaintiffs' omission of the word "only" is also significant.  Plaintiffs contend that the purported consent to federal court jurisdiction in the IYC Agreement should carry over to the Halmos Agreement because both Agreements were executed at the same time and apply to the same governmental entities.  [DE 50] at 13.  However, the parties specified in the IYC Agreement that the agreement to submit to federal court jurisdiction (on IYC's part) was for purposes of enforcement of the IYC Agreement *only*.  The use of the word "only," combined with the fact that the Halmos Agreement omits the federal court jurisdiction language (even though the Agreements are identical in most respects), shows that the parties intended for the federal court jurisdiction language to apply to "only" the IYC Agreement.

At any rate, even if both Agreements expressly provided that all of the parties (and not just IYC) agreed that this Court would have jurisdiction over the parties and the Agreements, the fact remains that neither the State of Florida nor any of the Florida Defendants are a party to either of the Agreements for the reasons explained in the Dismissal Order.  Previously, Plaintiffs maintained that the State of Florida was a party to the Agreements.  *See, e.g.* [DE 1] ¶¶ 60-65.  Plaintiffs now acknowledge that the State of Florida is not a party to – and did not sign – the Agreements.  Instead, they contend that the State of Florida is nevertheless bound by the Agreements to the same extent as NOAA under an agency theory.  *See* [DE 50] at 3-14.

Plaintiffs seem to advance their contention that the State of Florida is bound by the Agreements for two purposes: (1) to show that the State of Florida is bound by the provision in the IYC Agreement discussed above (§ 9) that references this Court having jurisdiction over the parties and the IYC Agreement (i.e., to support Plaintiffs' argument that the State of Florida waived its Eleventh Amendment sovereign immunity); and (2) to urge the Court to reconsider its determination that Plaintiffs failed to state a claim against the State of Florida (as noted above, the

Court found that Plaintiffs failed to state a claim against the State of Florida because the State of Florida was not a party to the Agreements).

Notwithstanding Plaintiffs' attempt to throw new arguments into the mix in their Motion for Reconsideration, Plaintiffs' argument that the State of Florida is bound by the Agreements falls flat. Plaintiffs argue that the State of Florida is somehow bound by the Agreements with Halmos and IYC because "Florida and NOAA entered into four written co-trustee agreements whereby Florida, FDEP, and FFWC became deputized federal agents employed by the Department of Commerce." [DE 50] at 12. As an initial matter, this argument injects new facts into the mix that were not alleged in the initial Complaint.[7] Regardless, Plaintiffs do not point to anything in those agreements (between the State of Florida and the federal government) that would bind the State of Florida to the Agreements at issue here.

In fact, as discussed in this Court's Dismissal Order, the plain language of the Agreements defeats Plaintiffs' contention that the State of Florida is bound by the Agreements. *See* [DE 27] at 12-14. For starters, the Agreements only make the State of Florida a "party" to the extent it executes the Agreements. [DE 30-1] at 2 (§ 1.6); [DE 30-1] at 16 (§ 1.6). Moreover, both Agreements state, "[s]hould FLORIDA not execute this AGREEMENT (herein any non-signatory is referred to as a 'Non-Party') . . . the release contained in . . . this AGREEMENT, and any and all other alleged restriction[s] or adverse effect[s] to [HALMOS's or IYC's] rights, claims and defenses against all Non-Parties, including but not limited to FLORIDA, shall become null and

---

[7] In the initial Complaint, Plaintiffs did allege that, "[w]orking under a co-trustee agreement, NOAA and the State of Florida jointly manage the Sanctuary." [DE 1] ¶ 58. But Plaintiffs included no further allegations regarding any agreements between the federal government and the State of Florida, and Plaintiffs failed to include any factual allegations to attempt to establish that any agreements between the federal government and the State of Florida could have served to bind the State of Florida to the Agreements in this case.

void as to all Non-Parties only . . . ."  [DE 30-1] at 7 (§ 4.4); [DE 30-1] at 22 (§ 4.5).  Thereafter, in all bold, the Agreements make clear that nothing therein, "express or implied, confers, is intended to confer, or can be construed to confer, directly or indirectly, on any Non-Party . . . any rights, remedies, releases, claims, benefits, interest, standing, *obligations or liabilities*, of any nature or kind whatsoever under or by reason of this AGREEMENT."  [DE 30-1] at 14 (§ 17); [DE 30-1] at 29 (§ 18) (emphasis added).  Thus, the Agreements make clear that Florida is a Non-Party.  In fact, they explicitly state that Florida will be a Non-Party if it does not execute the Agreements.  Further, the Agreements make clear that they do not confer any obligations on any Non-Party.  Therefore, Plaintiffs' contention that the State of Florida is bound by the Agreements fails based on the plain language of the Agreements.[8]

While the fact that the State of Florida is not bound by the Agreements means that Plaintiffs failed to state a claim against the Florida Defendants (as discussed in the Dismissal Order), Florida's Non-Party status is even more significant for purposes of finding that it did not waive its sovereign immunity under the Eleventh Amendment.  As indicated above, section 9 of the IYC Agreement states: "For the purposes of enforcement of this AGREEMENT only, IYC agrees that the federal court for the Southern District of Florida will have jurisdiction of the parties and this AGREEMENT."  [DE 30-1] at 27 (§ 9).  Again, Plaintiffs' argument tries to conveniently omit the fact that section 9 expresses *IYC's* (not the State of Florida's) agreement that this Court would have jurisdiction over the parties and the IYC Agreement.  But if even if the Agreement stated that the parties agreed this Court would have jurisdiction over *the parties*, the fact remains that the Agreements make it utterly clear that the State of Florida is a *Non-Party*.  Thus, even if the State

---

[8] Moreover, if the State of Florida would be bound by the Agreements as an agent of NOAA regardless, the language in the Agreements about the State of Florida being a non-party if it did not sign the Agreements would have served no purpose.

of Florida were bound by the Agreements (notwithstanding its Non-Party status), section 9 would still not constitute a clear, express, and unequivocal declaration that the State of Florida agreed to submit itself to federal court jurisdiction.  Rather, Plaintiffs would need to bring any cause of action they may have against the Florida Defendants in state court.

For the foregoing reasons, Plaintiffs' request that the Court reconsider dismissal of the Florida Defendants should be rejected.

### 2.  Federal Defendants

In the Dismissal Order, the Court determined that the United States – not the federal agencies and officials named in the initial Complaint – was the only proper federal defendant.  The Court reached that determination by considering what statute, if any, provides for a waiver of the United States' sovereign immunity in this action.  In this regard, "[i]t is well settled that the United States, as a sovereign entity, is immune from suit unless it consents to be sued." *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015) (citing *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1188 (11th Cir. 2011)).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." *Zelaya*, 781 F.3d at 1322 (citing *Meyer*, 510 U.S. at 475-76).  Moreover, waivers "cannot be implicit—for courts to have jurisdiction over a suit against the United States, the waiver of sovereign immunity must be 'unequivocally expressed in statutory text.'" *Smith v. United States*, 14 F.4th 1228, 1231 (11th Cir. 2021) (quoting *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012)); *see also Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020) ("Plaintiffs cannot sue the United States unless the United States unequivocally has waived its sovereign immunity.").

17

"To maintain an action against the United States in federal court, a plaintiff must identify a statute that confers subject matter jurisdiction on the district court and a federal law that waives the sovereign immunity of the United States to the cause of action." *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003) (citations omitted); *see also Zelaya*, 781 F.3d at 1322. In their initial Complaint, Plaintiffs alleged that this Court has jurisdiction under Article III, Section 2 of the Constitution and under 28 U.S.C. § 1331, [DE 1] ¶ 29, but they did not identify any federal law that waives the government's sovereign immunity in this action.[9]

When the Federal Defendants moved to dismiss the initial Complaint, they argued that "the only possible waiver of sovereign immunity [in this action] is the Suits in Admiralty Act ('[SAA]')," which they asserted only waived sovereign immunity as to the United States, not the Federal Defendants. [DE 16-1] at 8-9. Consequently, they argued that the United States – not the Federal Defendants – was the proper defendant. In response to the Federal Defendants' motion to dismiss, Plaintiffs took issue with the Federal Defendants' contention that the SAA was the only possible waiver of the government's sovereign immunity, but they did not establish that any other statute waived the government's sovereign immunity in this action. *See* [DE 19] at 4-5. Regardless, Plaintiffs stated in their response that they were "not opposed to amending the Complaint to list only the United States of America as the only federal party," but that "any such amendment should bar the Government from later claiming that it cannot offer anything less than full relief in this litigation." *Id.* at 5.

---

[9] *Cf. Bufkin v. Scottrade, Inc.*, 812 F. App'x 838, 843 (11th Cir. 2020) ("He also cites § 1331, which provides for jurisdiction over civil claims arising under the constitution and laws of the United States (i.e., federal questions), and § 1343, which applies to federal civil rights violations by state officials, but neither of those statutes provide a waiver of sovereign immunity." (citing *Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972))).

With Plaintiffs failing to establish that any statute other than the SAA provides a waiver of the federal government's sovereign immunity in this action, the Court found, based on its analysis of the materials and arguments before it,  that "the Agreements are maritime contracts, and— absent any argument or evidence to the contrary at this stage in the proceedings—the SAA serves as the United States' only possible waiver of sovereign immunity with regard to the Agreements." [DE 27] at 17.  And because the SAA "only expressly waives sovereign immunity over the United States—not its agencies or their officers or employees," the Court found that "the Federal Defendants, as agencies and officers of the United States, are not proper parties to this action and must be dismissed."  *Id.* at 17-18.  However, the Court granted Plaintiffs leave to substitute the United States for the Federal Defendants, *id.* at 18, which Plaintiffs did in their Amended Complaint.  Moreover, in their Amended Complaint, Plaintiffs alleged that "this Court also has jurisdiction pursuant to 46 U.S.C. § 30903 [the SAA's waiver of immunity provision] because this action arises from a maritime dispute."  [DE 30] ¶ 15.[10]

However, nearly a year after filing their Amended Complaint, and more than a year after the entry of the Dismissal Order, Plaintiffs filed their Motion for Reconsideration, arguing that

---

[10] Plaintiffs argue in their Motion for Reconsideration that their former counsel "had no authorization or authority or legal basis to agree the United States is the sole Defendant."  [DE 50] at 3.  However, "clients are to be held accountable for the acts and omissions of their attorneys." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004); *see also Dos Santos v. United States Att'y Gen.*, 982 F.3d 1315, 1319 (11th Cir. 2020) ("[I]t has long been understood that a party who 'voluntarily chose' an attorney to represent her cannot later choose to 'avoid the consequences of the acts or omissions of this freely selected agent.' Any other rule 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'" (internal citation omitted)); *Hornady*, 118 F.4th at 1378.  At any rate, it was in Plaintiffs' July 2022 response to the Federal Defendants' motion to dismiss that Plaintiffs indicated they were "not opposed to amending the Complaint to list only the United States of America as the only federal party."  [DE 19] at 5.  If Plaintiffs' counsel agreed to substitute the United States without Plaintiffs' authorization, Plaintiffs should not have waited nearly two years – they filed their Motion for Reconsideration in April 2024 – to raise the issue with the Court.

"the Court overlooked that the Federal Defendants waived their sovereign immunity in accordance

with other statutes, including the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ('APA'); the

mandamus statute, 28 U.S.C. § 1361; *and/or* the Little Tucker Act, 28 U.S.C. § 1346(a)(2)."  [DE

50] at 15 (emphasis added).   It is Plaintiffs, though, that overlook that it was their burden to

establish which statute waives the government's sovereign immunity in this matter.   Plaintiffs were

required to satisfy their burden by identifying the statute in their Complaint, or at the very least,

by establishing, in their response to the Federal Defendants' motion to dismiss, the source of the

waiver of the government's sovereign immunity.[11]   But Plaintiffs did not do that.   Instead, they

---

[11] *See Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003) ("To maintain an action against
the United States in federal court, a plaintiff must identify . . . a federal law that waives the
sovereign immunity of the United States to the cause of action." (citations omitted)); *Zelaya*, 781
F.3d at 1322; *Montero v. United States*, No. 23-13571, 2024 WL 4120235, at *1 (11th Cir. Sept.
9, 2024) ("Plaintiffs have the burden of showing an unequivocal waiver of sovereign immunity as
to the specific claims that they seek to bring against the government."); *Zadoorian v. Gwinnett
Tech. Coll.*, No. 22-14206, 2024 WL 1554362, at *7 (11th Cir. Apr. 10, 2024) ("The plaintiff has
the burden of showing an unequivocal waiver of sovereign immunity as to the specific claims that
he seeks to bring against the government."); *Kight v. U.S. Dist. Ct., N. Dist. of Ga.*, 681 F. App'x
882, 883 (11th Cir. 2017) ("The district court did not err in dismissing Kight's complaint because
Kight failed to identify a valid waiver of sovereign immunity for his claims."); *Caldwell v. Klinker*,
646 F. App'x 842, 845 (11th Cir. 2016) ("Therefore, as the party filing suit in federal court,
Caldwell bore the burden of establishing, by a preponderance of the evidence, facts supporting the
existence of a waiver of sovereign immunity."); *Lawrence v. United States*, 597 F. App'x 599, 602
(11th Cir. 2015) ("The plaintiff bears the burden of establishing subject-matter jurisdiction. Here,
that means that Lawrence bears the burden of establishing a waiver of sovereign immunity."
(internal citation omitted)); *Thompson v. McHugh*, 388 F. App'x 870, 872 (11th Cir. 2010)
("Because Thompson is suing the Army, she bears the burden of establishing that the federal
government has waived its sovereign immunity with respect to her claim."); *Ishler v. Internal
Revenue*, 237 F. App'x 394, 398 (11th Cir. 2007) ("Additionally, the plaintiff bears the burden of
establishing subject matter jurisdiction, and, thus, must prove an explicit waiver of immunity."
(internal citation omitted)); *McNair v. Gov't of N. Carolina*, No. 21-7065, 2022 WL 986223, at *1
(D.C. Cir. Mar. 28, 2022) ("Appellant has not plausibly alleged any facts that show that appellees
have waived their sovereign immunity."); *Zoldan v. Gov't of U.S.*, No. 22-5027, 2022 WL 880491,
at *1 (D.C. Cir. Mar. 22, 2022) ("[A]ppellant has not plausibly alleged any facts that show that
appellee has waived its sovereign immunity."); *Giancarlo v. Dep't of Hous. & Urb. Dev.*, No. 23-
62419-CIV, 2024 WL 3497609, at *1 (S.D. Fla. Feb. 12, 2024) ("Sovereign immunity precludes
subject matter jurisdiction in Florida and federal courts, and a party suing the United States or a
federal agency must allege—in the complaint—the applicable waiver of sovereign immunity. A

attempt to point to other potential statutes that waived sovereign immunity for the first time in their Motion for Reconsideration, which they did not file until more than two years after commencement of this action and nearly two years after they responded to the Federal Defendants' motion to dismiss the initial Complaint.  This comes after Plaintiffs seemed to accept the premise of the motion to dismiss that the SAA applies here given Plaintiffs' allegation in paragraph 15 of the Amended Complaint that this Court has jurisdiction under the SAA's waiver of immunity provision.  Yet, Plaintiffs now attempt to reverse course, in addition to arguing that the Court should have done their work for them by considering potential sources of waiver of sovereign immunity that Plaintiffs did not raise in response to the Federal Defendants' motion to dismiss the initial Complaint.

Moreover, I reiterate that their Motion for Reconsideration itself was not filed for over a year after the entry of the Dismissal Order.  Simply stated, the Court should decline to reconsider its determination, at this late juncture, that Plaintiffs failed to identify a statute other than the SAA under which the government waived its sovereign immunity.  Thus, the Court should decline to reconsider its determination that the United States is the only proper federal defendant.[12]

---

failure to plead the statutory waiver of sovereign immunity results in a failure to invoke the court's subject matter jurisdiction." (internal citations and quotation marks omitted) (alteration adopted)); *David v. United States*, No. 8:19-CV-2591-T-36JSS, 2020 WL 4734949, at *4 (M.D. Fla. Aug. 14, 2020) ("The failure to allege that sovereign immunity has been waived as to the claims asserted and to identify the source of the waiver are fatal defects which subjects this action to dismissal.").

[12] In their Motion for Reconsideration, Plaintiffs do not appear to dispute that the United States is the only proper federal defendant when the government's sovereign immunity is waived under the SAA.  Rather, Plaintiffs' argument is that the waiver of sovereign immunity comes from some statute other than the SAA.

Also, while Plaintiffs argue in their Motion for Reconsideration that the SAA does not apply here, had the Court found at the time it entered the Dismissal Order that the SAA did not waive the government's sovereign immunity in this action, Plaintiffs would not have even been given leave to substitute the United States.  Rather, this action likely would have been dismissed without leave to amend (albeit without prejudice) because Plaintiffs failed to identify *any* statute (aside from the

Lastly, I note that the Motion for Reconsideration does not seem to seek reconsideration of the Court's determination that Plaintiffs failed to state a claim against the Federal Defendants (regardless of whether Plaintiffs had sued the United States or the Federal Defendants).  And as discussed in the next section of this Report, Plaintiffs' factual allegations still do not plausibly establish a breach of contract by NOAA or the United States (or any of the other defendants).  Thus, even if the Court were to reconsider its determination regarding the proper federal defendant(s), this action would still be subject to dismissal on Rule 12(b)(6) grounds.

## B.  RENEWED MOTION TO DISMISS

This Court should grant the Renewed Motion to Dismiss.  As an initial matter, the Court expressly warned Plaintiffs that the failure to file a motion to amend their complaint "with the proposed attachment attached" by April 17, 2024 "**will result in immediate dismissal of Plaintiffs' claims without prejudice and without further warning.**"  [DE 48].  But Plaintiffs did not comply with the Court's Order.  Therefore, the Court should dismiss Plaintiffs' claims as it previously indicated it would do.

Although Plaintiffs contend that they could not comply with the Court's directive unless and until the Court ruled on their Motion for Reconsideration, their contention is unavailing. Notably, it was Plaintiffs in the first place who sought leave to file a second amended complaint, [DE 44, 45], and the Court generously gave them until April 17, 2024 to seek leave to amend (in a case that was filed at the beginning of 2022 and in which Plaintiffs' Amended Complaint was filed in May 2023).  But Plaintiffs opted not to seek leave to amend by the extended deadline the

---

SAA) – prior to the entry of the Dismissal Order – that could have waived the government's sovereign immunity.  Again, it was Plaintiffs' burden to do so.  *See supra* note 11.

Court afforded them.[13]  Even if Plaintiffs thought that reconsideration was warranted, they could have filed their proposed second amended complaint as an attachment to their Motion for Reconsideration and requested leave to file their proposed second amended complaint when the Court ruled upon the Motion for Reconsideration.  But they did not do that, even though they previously recognized the need "to add specificity as to the allegations of the breach of contract" in the Amended Complaint.  [DE 44] at 2 (¶ 4); [DE 45] at 1.  Moreover, Halmos seems to acknowledge in his response to the Renewed Motion to Dismiss – a response that is unresponsive to the arguments raised in the Renewed Motion to Dismiss – that the Amended Complaint is "deficient" and "deficiently pleaded."  [DE 60] at 6, 7.  He also "disavows" (at least certain) allegations included in the Amended Complaint.  *Id.* at 13.

At any rate, it is evident that Plaintiffs' Amended Complaint fails to cure the deficiencies set forth in the Court's Dismissal Order.  In finding that Plaintiffs failed to state a claim in their initial Complaint, this Court explained that "Plaintiffs only provide[d] conclusory allegations that Defendants breached their obligations under the Agreements."  [DE 27] at 19.  The Court elaborated:

> Plaintiffs allege that Defendants failed to comply with their obligation under the Agreements to (1) cooperate with Plaintiffs in their defense of certain legal actions and (2) refrain from providing any form of aid or support of the non-parties bringing those actions, and failed to honor, perform, and comply with their obligations as defined and set forth in sections 3 through of the Agreements, and as a result, Plaintiffs have been exposed to the inconvenience and costs of multiple investigations, regulatory actions, civil lawsuits, and criminal prosecutions in Monroe County, Florida. But Plaintiffs provide absolutely no factual support for these allegations: Plaintiffs do not (1) identify the state court actions, regulatory

---

[13] Halmos's response to the Renewed Motion to Dismiss protests that Defendant should not have filed that motion, as Defendant's first motion to dismiss the Amended Complaint was denied as moot.  However, Halmos overlooks the fact that the only reason Defendant's prior motion to dismiss was denied as moot was because Plaintiffs represented that they would file a second amended complaint.  But Plaintiffs failed to do so by the Court's deadline, thus eliminating the only reason for the Court's denial of Defendant's prior motion to dismiss.

actions, or investigations; (2) provide any information concerning the subject matters of the state court actions, regulatory actions, or investigations; (3) explain— to any degree—how any of the state court actions, regulatory actions, or investigations concern or relate to the subject matter of the Agreements; or (4) detail with any specificity what Defendants did or did not do to breach Agreements. Instead, Plaintiffs' conclusory allegations amount to nothing more than a formulaic recitation of the breach element of a breach of contract claim and fall short of the factual content needed to establish a plausible claim for relief.

[DE 27] at 19-20 (cleaned up).

To attempt to address the deficiencies that this Court identified in the Dismissal Order, Plaintiffs added allegations into their Amended Complaint into a new section entitled "Plaintiff Halmos is Charged Criminally and is also Sued in Civil Actions Along with His Corporate Entities in Monroe County, Florida." [DE 30] at 16-18. The new allegations include the following (among others):

> 75. Halmos has personally been subjected to criminal investigations and prosecutions relating entirely to *Legacy* in Monroe County, Florida. These cases ranged from misdemeanors to infractions directly relating to Halmos' efforts to relocate *Legacy* from Key West, Florida.
>
> 76. In one instance, Halmos was detained, while on the water, by Florida law enforcement officers and searched. This invasive procedure arose out of a claim that Halmos could not produce a registration for his vessel. . . . The government's conduct in this instance violated the Agreements.
>
> 77. Additionally, Halmos has been charged in several misdemeanor cases, all of which involved the subject matter of the NOAA Agreements. For example, in *State of Florida v. Peter Halmos*, Case Number 19-MM-001343, the State of Florida charged Mr. Halmos with three counts of reckless operations of a vessel, in violation of section 327.33, Florida Statutes. This is a first-degree misdemeanor that was consolidated with additional infractions under case number 19-IN-003667-A-K and 19-IN-003668-A-K. These charges arose out of Halmos' efforts to remove *Legacy* from Key West, Florida.
>
> 74. Further, Halmos and his related corporate entities have also been involved in a number of civil suits in Monroe County, Florida involving *Legacy* and arising out of the subject matter of the NOAA Agreements. In a battery of cases including, but not limited to, *3D of Key West, Inc. v. Peter Halmos, et al.*, Case Number 21-CC-346-K, *Longstock II, LLC v. Peter Halmos, et al.*, Case Number 18-CA-000943-K, *Longstock II, LLC v. Peter Halmos, et al.*, Case Number 18-CC- 000108-

K, and *Longstock II, LLC v. Peter Halmos*, Case Number 19-CA-000515-K, seeking eviction, declaratory and injunctive relief, and damages.

75. Each of these civil claims related specifically to the subject matter of the NOAA Agreements and arose from Halmos' efforts to repair and later remove *Legacy* Key West, Florida. These cases were filed after the NOAA Agreements were negotiated while Halmos was attempting to rehabilitate *Legacy.* The plaintiffs in each of these litigants pursued a strategy designed to evict *Legacy*, to seize *Legacy* as part of a failed self-help scheme, and to deny Halmos the benefit of the bargain he had struck with the government. When Halmos, exasperated by the continued harassment sought to remove *Legacy*, the civil plaintiffs sought damages for alleged damages caused by Halmos and his related entities while trying to relocate *Legacy*.

As the foregoing allegations show, Plaintiffs did at least include allegations identifying some state court actions in which they contend Defendant(s) were contractually obligated to cooperate with them – allegations this Court noted were missing from the initial Complaint.  But Plaintiffs still have not "provide[d] any information concerning the subject matters of the state court actions, regulatory actions, or investigations," explained "how any of the state court actions, regulatory actions, or investigations concern or relate to the subject matter of the Agreements," or "detail[ed] with any specificity what Defendants did or did not do to breach [the] Agreements." [DE 27] at 19-20.  That is not to say that Plaintiffs needed to provide every single detail that the Court indicated was missing from the initial Complaint.  After all, Rule 8 does not require detailed factual allegations.  However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted).  What Plaintiffs needed to do was allege "enough facts to state a claim to relief that is plausible on its face." *Tims*, 935 F.3d at 1236 (quoting *Twombly*, 550 U.S. at 570).  But they have not done that.

The Amended Complaint alleges that the United States breached the Agreement(s) by failing to cooperate with Plaintiffs in various actions, including three misdemeanor and infraction cases brought by the State of Florida in 2019 and four lawsuits commenced by private parties

against Plaintiffs between 2018 and 2021.  *See* [DE 30] ¶¶ 77, 74, 90-91, 98-99.  Plaintiffs' theory

is that Defendant was required to cooperate with Plaintiffs in connection with these proceedings

because the proceedings allegedly arise out of or involve the subject matter of the Agreements.

The Amended Complaint, however, does not provide any facts regarding the nature of these

proceedings or to plausibly establish that the proceedings pertain to the subject matter of the

Agreements.  Rather, the allegations that allege a connection between the proceedings and the

subject matter of the Agreements are conclusory, and "[c]onclusory allegations are not entitled to

the assumption of truth."  *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing

*Iqbal*, 556 U.S. at 679); *see also Newbauer*, 26 F.4th at 934 ("[I]f allegations are indeed more

conclusory than factual, then the court does not have to assume their truth." (quoting *Chaparro v.*

*Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012))).[14]

        Without further factual allegations, the Court cannot find that the proceedings Plaintiff has

identified in the Amended Complaint arise under or even plausibly *relate to* the Subject Matter of

the Agreements.  As indicated above, the Subject Matter of both Agreements is defined as "the

grounding of S/Y *Legacy* in the SANCTUARY on or about October 24, 2005, the time S/Y *Legacy*

has remained grounded there, and the salvage/recovery/removal operation to remove S/Y *Legacy*

---

[14] *See also Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023) ("Th[e] [plausibility] standard requires plaintiffs to provide more than naked assertions devoid of further factual enhancement, mere labels and conclusions, or a formulaic recitation of the elements of a cause of action. Ultimately, a complaint may be dismissed for failure to state a claim when, ignoring any mere conclusory statements, the remaining allegations do not plausibly suggest that the defendant is liable." (internal citations omitted) (cleaned up)); *Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 772 (11th Cir. 2016) ("Allegations that are no more than 'labels and conclusions,' a 'formulaic recitation of the elements of a cause of action,' or 'naked assertions devoid of further factual enhancement' are not well-pled facts that must be accepted as true and will not be sufficient to withstand a motion to dismiss." (citing *Iqbal*, 556 U.S. at 678)).

from the SANCTUARY." [DE 30-1] at 2 (§ 1.2); [DE 30-1] at 16 (§ 1.2).[15]  Yet, the proceedings

that Plaintiffs assert relate to the Subject Matter of the Agreements were not commenced until over

a decade later.   Judicial experience and common sense suggest that the proceedings are not

plausibly related to the Subject Matter of the Agreements, *at least not without greater factual*

*allegations*.  *Cf. Newbauer*, 26 F.4th at 934 ("'Determining whether a complaint states a plausible

claim for relief is a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense' in reviewing the plaintiff's allegations. Additionally, 'threadbare

recitals of the elements of a cause of action' and 'conclusory statements' are insufficient." (cleaned

up) (internal citation omitted)).

Moreover, not only does Halmos incorrectly state what the Subject Matter of the Halmos

Agreement is, *see supra* note 15, Plaintiffs seem to take an overbroad view of the term "relating

to" in the Amended Complaint.   While the term "relating to" is broader than the term "arising

under," it is not without limits.   It still requires at least some direct or significant relationship.  *See*

*Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1317-18 (11th Cir. 2013); *Doe v. Princess Cruise*

*Lines, Ltd.*, 657 F.3d 1204, 1218-19 (11th Cir. 2011); *Leidel v. Coinbase, Inc.*, 729 F. App'x 883,

887 (11th Cir. 2018).   After all, if the term "relate to" was "taken to extend to the furthest stretch

of its indeterminacy, it would have no limiting purpose because really, universally, relations stop

nowhere."  *Bailey*, 705 F.3d at 1318 (quoting *Princess Cruise*, 657 F.3d at 1218-19).   And the

Amended Complaint does seem to be overstretching the term.   In fact, certain allegations in the

Amended Complaint allege a direct relationship between the proceedings at issue and Plaintiffs'

efforts to relocate *Legacy* from Key West.  *See, e.g.*, [DE 30] ¶ 75.   But the Subject Matter of the

---

[15] Thus, Halmos's contention in his response to the Renewed Motion to Dismiss that the Halmos Agreement "does not concern the removal of *Legacy* from the grounding site within the [Sanctuary]," [DE 60] at 8, is refuted by the plain language of the Halmos Agreement.

Agreements does not encompass the removal of *Legacy* from *Key West*, only its removal from the *Sanctuary*, which occurred over a decade before the proceedings at issue were commenced.  At any rate, even if Plaintiffs had plausibly alleged that proceedings at issue relate to the Subject Matter of the Agreements, the fact remains that the Amended Complaint wholly fails to articulate what the United States (or the dismissed Federal Defendants) did or did not do to breach the Agreements.  Rather, Plaintiffs' allegations in this regard are conclusory.  *See, e.g.*, [DE 30] ¶¶ 92-93.

Ultimately, though, the point is that the factual allegations in the Amended Complaint fall short of stating a claim for relief that is plausible on its face.  Therefore, the Amended Complaint should be dismissed.

<u>**CONCLUSION**</u>

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion for Reconsideration [DE 50] be **DENIED**, that the Motion to Adopt [DE 51] be **GRANTED** to the extent it seeks to adopt the arguments made in the Motion for Reconsideration but **DENIED** insofar as it seeks reconsideration, that the Motion to Dismiss [DE 57] be **GRANTED**, and that this action be **DISMISSED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. §

636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

      **DONE AND SUBMITTED** in Fort Lauderdale, Florida this 25th day of February 2025.

Jared M. Strauss
United States Magistrate Judge